**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

KENTUCKY HOSPITAL, LLC,
d/b/a Clark Regional Medical Center
175 Hospital Drive
Winchester, KY 40391,

PINELAKE REGIONAL HOSPITAL, LLC,
d/b/a Jackson Purchase Medical Center
1099 Medical Center Circle
Mayfield, KY 42066,

SPRING VIEW HOSPITAL, LLC,
d/b/a Spring View Hospital
320 Loretto Road
Lebanon, KY 40033, and

PHC-FORT MORGAN, INC.,
d/b/a Colorado Plains Medical Center
1000 Lincoln Street
Ft. Morgan, CO 80701,

      Plaintiffs,

 v.

THOMAS E. PRICE, M.D.,
*in his official capacity as
Secretary of Health and Human Services*
200 Independence Avenue, SW
Washington, DC 20201,

SEEMA VERMA,
*in her official capacity as Administrator of
the Centers for Medicare & Medicaid Services*
7500 Security Boulevard
Baltimore, MD 21244, and

CENTERS FOR MEDICARE
& MEDICAID SERVICES
7500 Security Boulevard
Baltimore, MD 21244,

      Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COME NOW Plaintiffs Kentucky Hospital, LLC, doing business as Clark Regional Medical Center; PineLake Regional Hospital, LLC, doing business as Jackson Purchase Medical Center; Spring View Hospital, LLC, doing business as Spring View Hospital; and PHC-Fort Morgan, Inc., doing business as Colorado Plains Medical Center (collectively, the "Plaintiff-Hospitals"), which bring this action seeking declaratory and injunctive relief against Defendants Thomas E. Price, M.D., Seema Verma, and the Centers for Medicare & Medicaid Services (collectively, "Defendants"), alleging as follows:

### PRELIMINARY STATEMENT

1. The Plaintiff-Hospitals treat patients who are eligible to receive medical benefits under the Medicaid Act, 42 U.S.C. §§ 1396 to 1396w-5.

2. Congress established the Disproportionate Share Hospital ("DSH") program under the Medicaid Act to help relieve the financial burden imposed on hospitals that treat a disproportionate share of Medicaid and uninsured patients. 42 U.S.C. § 1396r-4. The DSH program helps reimburse DSH hospitals for the treatment they provide to Medicaid and uninsured patients through payment adjustments. *Id.* § 1396r-4(g)(1)(A). These payment adjustments may not exceed: (1) the costs of services to individuals eligible for Medicaid, net of payments received under the Medicaid Act (the "Medicaid Shortfall"); plus (2) the costs of services to individuals who have no health insurance or other third-party coverage, net of payments received from those uninsured patients. *Id.* The product of this statutory equation is commonly known as the "hospital-specific limit." Only the first part of this statutory equation—the calculation of the Medicaid Shortfall—is at issue in this case.

3. The Medicaid Act expressly provides that, to calculate a DSH hospital's Medicaid Shortfall, only Medicaid payments are to be subtracted from costs. 42 U.S.C. § 1396r-4(g)(1)(A).

4. Until recently, Centers for Medicare & Medicaid Services ("CMS") regulations similarly specified that only Medicaid payments were to be considered in the Medicaid Shortfall calculation. 42 C.F.R. § 447.299(c)(16).

5. However, without engaging in notice-and-comment rulemaking under the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, CMS published and began enforcing a supposed clarification of the requirements contained in 42 C.F.R. § 447.299. This supposed clarification manifested itself most directly in or about early 2010 in a document responding to frequently asked questions ("FAQs") entitled, "Additional Information on the DSH Reporting and Audit Requirements," which was posted on CMS's website where it remains to this day. *See* https://www.medicaid.gov/medicaid/financing-and-reimbursement/downloads/part-1-additional-info-on-dsh-reporting-and-auditing.pdf (last visited June 16, 2017). The portions of that document at issue here are FAQs 33 and 34.

6. FAQs 33 and 34 instruct that DSH hospitals must include in the calculation of their Medicaid Shortfall non-Medicaid payments such as private health insurance and Medicare payments, contrary to the plain language of 42 U.S.C. § 1396r-4(g)(1)(A) and 42 C.F.R. § 447.299(c)(16).

7. Because 42 U.S.C. § 1396r-4(g)(1)(A) and 42 C.F.R. § 447.299(c)(16) unambiguously require only *Medicaid* payments to be included in the Medicaid Shortfall calculation, the supposed clarifications set forth in FAQs 33 and 34 are both procedurally and substantively invalid.

8. On December 29, 2014, this Court preliminarily enjoined the application, implementation and enforcement of FAQ 33, which required that private insurance payments be included in the calculation of the hospital-specific limit. *See Tex. Children's Hosp. v. Burwell*, 76

F. Supp. 3d 224, 246–47 (D.D.C. 2014) (Sullivan, J.). A final judgment has not yet been entered in that case as of the time of this filing.

9. A second federal district court entered a final judgment vacating FAQs 33 and 34 earlier this year. *See N.H. Hosp. Ass'n v. Burwell*, No. 1:15-cv-00460, 2017 WL 822094, at *16 (D.N.H. Mar. 2, 2017). The time for filing an appeal from that final judgment has elapsed with no appeal being filed.

10. At least four other federal lawsuits have been filed challenging FAQs 33 and/or 34. *See Children's Health Care v. Burwell*, No. 0:16-cv-04064 (D. Minn. filed Dec. 2, 2016) (challenging FAQ 33); *Tenn. Hosp. Ass'n v. Burwell*, No. 3:16-cv-03263 (M.D. Tenn. filed Dec. 15, 2016) (challenging FAQs 33 and 34); *Children's Hosp. of the Kings Daughters, Inc. v. Price*, 2:17-cv-00139 (E.D. Va. filed Mar. 7, 2017) (challenging FAQ 33); and *Mo. Hosp. Ass'n v. Price*, No. 2:17-cv-04052 (W.D. Mo. filed Mar. 22, 2017) (challenging FAQs 33 and 34); *see also Mo. Dep't of Soc. Servs. v. Burwell*, No. 1:15-cv-01329 (D.D.C. filed Aug. 17, 2015) (suit by a state Medicaid agency seeking clarification regarding the scope of the preliminary injunction entered in *Texas Children's Hospital*).

11. In spite of the foregoing, Defendants continue to enforce the requirements imposed by FAQs 33 and 34. As a result, the Kentucky Department of Medicaid Services and the Colorado Department of Health Care Policy and Financing (collectively, the "State Medicaid Agencies") have informed the Plaintiff-Hospitals that FAQs 33 and 34 effectively require the State Medicaid Agencies to recoup DSH funds paid to the Plaintiff-Hospitals.

12. Moreover, shortly after a final judgment was entered in *New Hampshire Hospital Ass'n*, CMS published a final rule amending 42 C.F.R. § 447.229 to essentially codify the content of FAQs 33 and 34. *See* Medicaid Program; Disproportionate Share Hospital Pay-

ments—Treatment of Third Party Payers in Calculating Uncompensated Care Costs, 82 Fed. Reg. 16,114, 16,117 (Apr. 3, 2017) (the "2017 Rule").

13. Like FAQs 33 and 34, the 2017 Rule unlawfully lowers the hospital-specific limit on DSH payments in direct conflict with 42 U.S.C. § 1396r-4. Thus, the 2017 Rule is also unlawful and should be set aside under the APA.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the subject matter of this action and the parties thereto pursuant to 28 U.S.C. § 1331.

15. Venue lies in this judicial district under 28 U.S.C. § 1391(e).

## PARTIES

16. Plaintiff Kentucky Hospital, LLC, doing business as Clark Regional Medical Center ("Clark Regional"), is the operator of a 79-bed acute-care hospital located in Clark County, Kentucky. Clark Regional is an enrolled Medicaid provider entitled to reimbursement under the Kentucky Medicaid Program for the Medicaid-allowable costs Clark Regional incurs in treating Medicaid patients. Clark Regional qualifies to receive funding from the Medicaid DSH Program as a hospital that serves a disproportionate number of Medicaid and uninsured patients. Clark Regional's business address is 175 Hospital Drive, Winchester, Kentucky 40391.

17. Plaintiff PineLake Regional Hospital, LLC, doing business as Jackson Purchase Medical Center ("Jackson Purchase"), is the operator of a 107-bed acute-care hospital in Graves County, Kentucky. Jackson Purchase is an enrolled Medicaid provider entitled to reimbursement under the Kentucky Medicaid Program for the Medicaid-allowable costs Jackson Purchase incurs in treating Medicaid patients. Jackson Purchase qualifies to receive funding from the Medicaid DSH Program as a hospital that serves a disproportionate number of Medicaid and uninsured

patients. Jackson Purchase's business address is 1099 Medical Center Circle, Mayfield, Kentucky 42066.

18.   Plaintiff Spring View Hospital, LLC, doing business as Spring View Hospital ("Spring View"), is the operator of a 75-bed acute-care hospital located in Marion County, Kentucky. Spring View is an enrolled Medicaid provider entitled to reimbursement under the Kentucky Medicaid Program for the Medicaid-allowable costs Spring View incurs in treating Medicaid patients. Spring View qualifies to receive funding from the Medicaid DSH Program as a hospital that serves a disproportionate number of Medicaid and uninsured patients. Spring View's business address is 320 Loretto Road, Lebanon, Kentucky 40033.

19.   Plaintiff PHC-Fort Morgan, Inc., doing business as Colorado Plains Medical Center ("Colorado Plains"), is the operator of a 50-bed acute-care hospital located in Morgan County, Colorado. Colorado Plains is an enrolled Medicaid provider entitled to reimbursement under the Colorado Medicaid Program for the Medicaid-allowable costs Colorado Plains incurs in treating Medicaid patients. Colorado Plains qualifies to receive funding from the Medicaid DSH Program as a hospital that serves a disproportionate number of Medicaid and uninsured patients. Colorado Plains's business address is 1000 Lincoln Street, Ft. Morgan, Colorado 80701.

20.   Clark Regional, Jackson Purchase, Spring View, and Colorado Plains will be referred to collectively as the "Plaintiff-Hospitals."

21.   Defendant Thomas E. Price, M.D., is the Secretary of Health and Human Services (the "Secretary"). Congress has assigned to the Secretary statutory responsibilities relevant to this case. Although the Secretary has delegated many of those responsibilities to CMS, the Secretary retains legal responsibility for the agency actions complained of herein. The Secre-

tary's business address is 200 Independence Avenue, SW, Washington, District of Columbia 20201. The Secretary is sued in his official capacity only.

22.     Defendant Seema Verma is the Administrator of CMS (the "Administrator"). CMS's headquarters are located at 7500 Security Boulevard, Baltimore, Maryland 21244. The Administrator is sued in her official capacity only.

23.     Defendant CMS is an operating component within the Department of Health and Human Services. CMS issued FAQs 33 and 34, as well as the 2017 Rule complained of herein. CMS is an "agency" within the meaning of 5 U.S.C. §§ 551(1) and 701(b)(1). CMS's headquarters are located at 7500 Security Boulevard, Baltimore, Maryland 21244.

## BACKGROUND AND FACTUAL ALLEGATIONS

### The Medicaid Program

24.     Medicaid is a cooperative federal-state program under which the Federal Government provides financial assistance to participating States in connection with the provision of health care to lower-income and disabled individuals. Under the Medicaid Act, States are entitled to reimbursement for a percentage of the costs they incur in providing health care to their Medicaid-eligible populations. 42 U.S.C. § 1396b(a).

25.     A State participating in the Medicaid program must obtain CMS's approval of a state plan for medical assistance. 42 U.S.C. § 1396a. The State receives federal reimbursement for its expenditures on medical assistance under its state plan. *Id.* § 1396b.

26.     The Federal Government's share of a State's expenditures under the Medicaid program is called "federal financial participation" ("FFP"). The Medicaid Act and regulations promulgated thereunder establish the procedures by which States receive FFP for their Medicaid expenditures. 42 U.S.C. § 1396b(a)(1).

**Disproportionate Share Hospital Payments**

27. In 1981, Congress established the DSH Program under the Medicaid Act to require that all States participating in the Medicaid program must provide supplemental Medicaid payments to hospitals that serve a disproportionate number of Medicaid and other low-income patients with special needs. *See* Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35, § 2173(B)(ii), 95 Stat. 357, 808 (codified at 42 U.S.C. § 1396a(13)(A)(iv)). These supplemental payments are commonly known as "DSH payments."

28. Congress established the DSH program to help relieve the financial burden on certain hospitals that treat a disproportionate share of Medicaid and uninsured patients.

29. The formula for determining a hospital's maximum possible DSH payment is contained in 42 U.S.C. § 1396r-4(g). The hospital-specific limit is the maximum amount of DSH payments a hospital can receive on an annual basis.

30. The Medicaid Act prescribes that the hospital-specific limit may not exceed the amount of that hospital's "uncompensated costs" of serving Medicaid and low-income patients. 42 U.S.C. § 1396r-4(g)(1)(A). Importantly, the Medicaid Act sets forth the precise formula for determining "uncompensated costs" as

> the costs incurred during the year of furnishing hospital services (as determined by the Secretary and net of payments under this subchapter [i.e., the Medicaid Act], other than under this section, and by uninsured patients) by the hospital to individuals who either are eligible for medical assistance under the State plan or have no health insurance (or other source of third party coverage) for services provided during the year.

*Id.*

31. Two categories of "uncompensated costs" are eligible for DSH payments under the Medicaid Act: (1) the costs of services to Medicaid patients (the "Medicaid Shortfall compo-

nent"), and (2) the costs of services to uninsured patients (the "uninsured component"). Only the Medicaid Shortfall component is at issue in this case. *Id*.

32. The Medicaid Act establishes annual DSH allotments for each State that limits FFP for total statewide DSH payments made to hospitals. 42 U.S.C. § 1396r-4(f). If a State recoups a DSH payment made to a hospital in excess of the hospital-specific limit, such a recoupment may allow the State to make increased payments to other hospitals that have not reached their hospital-specific limit.

### Disproportionate Share Hospital Audits

33. The Medicaid Act requires States to annually audit their DSH payments to confirm whether hospitals received DSH payments in excess of the hospital-specific limit imposed by 42 U.S.C. § 1396r-4(j).

34. To ensure that the hospital-specific limit has been calculated correctly for each DSH hospital, each State must provide an annual report and audit of its DSH program to CMS. 42 U.S.C. § 1396r-4(j). This annual report must include, among other things, an "identification of each disproportionate share hospital that received a payment adjustment under this section for the preceding fiscal year and the amount of the payment adjustment made to such hospital for the preceding fiscal year." *Id.* § 1396r-4(j)(1)(A).

35. If an audit reveals DSH payments were made to a hospital in excess of its hospital-specific limit, the federal share of that overpayment must be returned by the State to the Federal Government. *See* 42 C.F.R. § 455.304(a)(2). The federal share of such Medicaid overpayments must generally be returned by the State to the Federal Government within one year of the overpayment being discovered by the State. 42 U.S.C. § 1396b(d)(2)(C).

36. To verify the accuracy of these annual state reports, States must employ an independent auditor to audit the State's compliance with federal DSH requirements. 42 U.S.C. § 1396r-4(j).

37. These independent audits must verify, among other things, that DSH payments made to each hospital comply with the hospital-specific limit. 42 U.S.C. § 1396r-4(j)(2).

38. These independent audits are generally conducted three years after the DSH year under review. Thus, DSH payments received in 2014 are being audited in 2017. The States must complete the audits by September 30 and submit them to CMS by no later than December 31. *See* Medicaid Program; Disproportionate Share Hospital Payments, 73 Fed. Reg. 77,904, 77,908, 77,919 (Dec. 19, 2008) (the "2008 Rule").

### CMS Regulations

39. In 2008, CMS finalized a rule that, among other things, interpreted the DSH program audit and reporting provisions of the Medicaid Act. The 2008 Rule "sets forth the data elements necessary" to comply with the Medicaid Act requirements for auditing and reporting DSH payments. *See* 2008 Rule, 73 Fed. Reg. at 77,904.

40. The regulations promulgated in the 2008 Rule require state annual reports to "present a complete, accurate, and full disclosure of all of their DSH programs and expenditures." 42 C.F.R. § 447.299(a).

41. They further require states to submit information "for each DSH hospital to which the State made a DSH payment." 42 C.F.R. § 447.299(c).

42. One piece of information each DSH hospital must submit for inclusion in the state annual report is its "total annual uncompensated care costs." The 2008 Rule defined "uncompensated care costs" as

> the total cost of care for furnishing inpatient hospital and outpatient hospital services to Medicaid eligible individuals . . . *less the sum of regular Medicaid [fee-for-service] rate payments, Medicaid managed care organization payments, [and] supplemental/enhanced Medicaid payments* . . . .

73 Fed. Reg. at 77,950 (codified at 42 C.F.R. § 447.299(c)(16)) (emphasis added).

43. Section 447.299, title 42 of the Code of Federal Regulations defines each type of cost and payment referenced in 42 C.F.R. § 447.299(c)(16). *See* 42 C.F.R. § 447.299(c)(6)–(15).

44. Section 447.299(c)(16), title 42 of the Code of Federal Regulations contains no reference to private insurance or Medicare payments.

### The FAQs and Legal Challenges Thereto

45. In January 2010, CMS posted a document on its website entitled "Additional Information on the DSH Reporting and Audit Requirements," which contains FAQs purporting to provide additional instructions regarding, among other things, the calculation of the hospital-specific limit. FAQs 33 and 34 are at issue here.

46. FAQ 33, and CMS's response thereto, states:

> **33. Would days, costs, and revenues associated with patients that have both Medicaid and private insurance coverage (such as Blue Cross) also be included in the calculation of . . . the DSH limit in the same way States include days, costs and revenues associated with individuals dually eligible for Medicaid and Medicare?**
>
> Days, cost[s], and revenues associated with patients that are dually eligible for Medicaid and private insurance should be included in the calculation of the Medicaid utilization rate (MIUR) for the purposes of determining a hospital eligible to receive DSH payments. Section [1396r-4(g)(1)] does not contain an exclusion for individuals eligible for Medicaid and also enrolled in private health insurance. Therefore, days, costs, and revenues associated with patients that are eligible for Medicaid and also have private insurance should be included in the calculation of the hospital-specific DSH limit.

*Id.* at 18.

47.  FAQ 34, and CMS's response thereto, states:

**34. The regulation states that costs for dual eligibles should be included in uncompensated care costs. Could you please explain further? Under what circumstances should we include Medicare payments?**

Section [1396r-4(g)] defines hospital-specific limits on FFP for Medicaid DSH payments. Under the hospital-specific limits, a hospital's DSH payment must not exceed the costs incurred by that hospital in furnishing services during the year to Medicaid and uninsured patients less payments received for those patients. There is no exclusion in section [1396r-4(g)(1)] for costs for, and payment made, on behalf of individuals dually eligible for Medicare and Medicaid. Hospitals that include dually-eligible days to determine DSH qualification must also include the costs attributable to dual eligibles when calculating the uncompensated costs of serving Medicaid eligible individuals. Hospitals must also take into account payment made on behalf of the individual, including all Medicare and Medicaid payments made on behalf of dual eligibles.

*Id.*

48.  Despite there being no reference to private health insurance or Medicare payments in 42 U.S.C. § 1396r-4(g)(1)(A) or 42 C.F.R. § 447.299(c)(16), FAQs 33 and 34 purport to require the inclusion of private health insurance and Medicare payments in the calculation of the Medicaid Shortfall component of the hospital-specific limit.

49.  This Court and the District of New Hampshire have preliminarily or permanently enjoined CMS from enforcing one or both of the FAQs above. *See Tex. Children's Hosp.*, 76 F. Supp. 3d at 246–47; *N.H. Hosp. Ass'n*, 2017 WL 822094, at *16.

50.  In the first case, two children's hospitals, one in Texas and one in Washington State, challenged FAQ 33 in this Court. On December 29, 2014, Judge Sullivan found that the two hospitals were "likely to succeed in arguing that FAQ 33 must be set aside as unlawful" for failure to comply with the APA's notice-and-comment requirements. *Tex. Children's Hosp.*, 76

F. Supp. 3d at 241. The parties have since filed cross-motions for summary judgment in that case, which remain pending as of the time of this filing.

51.     In the second case, the New Hampshire Hospital Association and several DSH hospitals challenged FAQs 33 and 34 in the District of New Hampshire. On March 2, 2017, that court granted summary judgment in favor of the plaintiffs, "permanently enjoin[ing CMS] from enforcing FAQs 33 and 34." *N.H. Hosp. Ass'n*, 2017 WL 822094, at *16. Similar to *Texas Children's Hospital*, the District of New Hampshire found that FAQs 33 and 34 failed to comply with the APA's notice-and-comment requirements. The court also found that CMS "acted 'in excess of statutory jurisdiction, authority . . . or short of statutory right'" in issuing FAQs 33 and 34. *Id.* at *8 (quoting 5 U.S.C. § 706(2)(C)). Defendants chose not to appeal the final judgment entered in *New Hampshire Hospital Ass'n*.

**The 2017 Rule**

52.     CMS published the 2017 Rule shortly after the entry of final judgment in *New Hampshire Hospital Ass'n*. *See* 82 Fed. Reg. 16,114. The 2017 Rule amended 42 C.F.R. § 447.299(c)(10) and essentially codifies the requirements imposed by FAQs 33 and 34.

53.     As amended, the regulation governing how costs must be considered in the calculation of the hospital-specific limit now reads:

> (10) *Total Cost of Care for Medicaid [Inpatient/Outpatient] Services.* The total annual costs incurred by each hospital for furnishing inpatient hospital and outpatient hospital services to Medicaid eligible individuals. The total annual costs are determined on a hospital-specific basis, not a service-specific basis. For purposes of this section, costs—
>
> (i) Are defined as costs net of third-party payments, <u>including, but not limited to, payments by Medicare and private insurance</u>.
>
> (ii) Must capture the total burden on the hospital of treating Medicaid eligible patients prior to payment by Medicaid. Thus, costs must be determined in the aggregate and not by estimating the cost of individual patients. For example, if a hospital treats two Medicaid eligible patients at a cost of $2,000 and receives a $500

payment from a third party for each individual, the total cost to the hospital for purposes of this section is $1,000, regardless of whether the third party payment received for one patient exceeds the cost of providing the service to that individual.

2017 Rule, 82 Fed. Reg. at 16,122 (to be codified at 42 C.F.R. § 447.299(c)(10) (2017)) (underlined emphasis added).

54. The 2017 Rule has an effective date of June 2, 2017, and applies nationwide. 82 Fed. Reg. at 16,115.

55. The substantive requirements imposed by the 2017 Rule—of including Medicare and private insurance payments in the hospital-specific limit calculation—are not embodied in the 2008 Rule. The 2017 Rule is thus a substantive new rule that cannot have retroactive effect.

56. Litigation has already commenced in this Court challenging the legality of the 2017 Rule. The Children's Hospital Association of Texas initiated such litigation on May 8, 2017, and subsequently filed a combined motion seeking a preliminary injunction and summary judgment on June 5, 2017. *See Children's Hosp. Ass'n of Tex. v. Price*, No. 1:17-cv-00844 (D.D.C.). That combined motion remains pending as of the time of this filing.

### The Plaintiff-Hospitals Will Be Irreparably Harmed by CMS's Enforcement of FAQs 33 and 34

57. Medicaid payments typically do not fully reimburse the Plaintiff-Hospitals for the actual costs they incur in treating Medicaid patients. The Plaintiff-Hospitals therefore rely on the DSH program to help mitigate the financial loss they might otherwise incur in treating Medicaid and uninsured patients.

58. As required by 42 U.S.C. § 1396r-4(j), Kentucky and Colorado each employed an independent auditor, Myers and Stauffer LC ("Myers and Stauffer"), to audit the States' compliance with federal DSH requirements.

59. In conducting its audit for Kentucky's state fiscal year ("SFY") 2013 and Colorado's SFY 2012–2013, Myers and Stauffer complied with the requirements imposed by FAQs 33 and 34, and thereby included Medicare and private insurance payments in its calculation of the Medicaid Shortfall component of the hospital-specific limit.

60. In November 2016, Clark Regional received a letter from Kentucky's Cabinet for Health and Family Services, Department for Medicaid Services (the "Kentucky Department"), which discussed the results of Clark Regional's SFY 2013 audit conducted by Myers and Stauffer. In that letter, the Kentucky Department asserted that Clark Regional received an overpayment of $811,764 in DSH payments, and that repayment in full was due within 60 days from the date of the letter. Clark Regional initiated the state administrative appeal process on December 1, 2016. However, Clark Regional has commenced this action because Defendants are not a party to that appeal and because CMS's actions are the cause of the Kentucky Department's recoupment demand.

61. In November 2016, Jackson Purchase received a letter from the Kentucky Department discussing the results of Jackson Purchase's SFY 2013 audit conducted by Myers and Stauffer. In that letter, the Kentucky Department asserted that Jackson Purchase received an overpayment of $76,734 in DSH payments, and that repayment in full was due within 60 days from the date of the letter. Jackson Purchase initiated the state administrative appeal process on December 1, 2016. However, Jackson Purchase has commenced this action because Defendants are not a party to that appeal and because CMS's actions are the cause of the Kentucky Department's recoupment demand.

62. In December 2016, Spring View received a letter from the Kentucky Department discussing the results of Spring View's SFY 2013 audit conducted by Myers and Stauffer. In that

letter, the Kentucky Department asserted that Spring View received an overpayment of $311,328 in DSH payments, and that repayment in full was due within 60 days from the date of the letter. Spring View initiated the state administrative appeal process on January 5, 2017. However, Spring View has commenced this action because Defendants are not a party to that appeal and because CMS's actions are the cause of the Kentucky Department's recoupment demand.

63.     In January 2017, Colorado Plains received a letter from Colorado's Department of Health Care Policy and Financing (the "Colorado Department") discussing the results of Colorado Plains's SFY 2012–13 audit conducted by Myers and Stauffer. In that letter, the Colorado Department asserted that Colorado Plains received an overpayment of $474,179 in DSH payments, and that repayment in full was due within 30 days from the date of the letter. Colorado Plains initiated the state administrative appeal process on February 16, 2017. However, Colorado Plains has commenced this action because Defendants are not a party to that appeal and because CMS's actions are the cause of the Colorado Department's recoupment demand.

64.     Independent DSH audits required by the Medicaid Act will continue to occur on an annual basis, and States will continue to assert recoupment demands in SFY 2014 and beyond if CMS continues to enforce the substantive requirements imposed by FAQs 33 and 34.

65.     By enforcing the substantive requirements imposed by FAQs 33 and 34, and requiring Kentucky and Colorado to include Medicare and private insurer payments in calculating the Medicaid Shortfall component of the hospital-specific limit, Defendants will cause the Plaintiff-Hospitals to have to refund potentially millions of dollars in DSH payments rightfully received pursuant to the plain language of the Medicaid Act.

66.     Defendants' continued enforcement of the substantive requirements imposed by FAQs 33 and 34 will cause irreparable injury for which the Plaintiff-Hospitals have no adequate

remedy at law. For example, upon information and belief, neither Kentucky nor Colorado has a mechanism for returning recouped DSH payments after the amounts so recouped have been redistributed to other DSH hospitals. *See Tex. Children's Hosp.*, 76 F. Supp. 3d at 242.

### The Plaintiff-Hospitals Will Be Irreparably Harmed by CMS's Enforcement of the 2017 Rule

67. As required by the Medicaid Act, and in accordance with the 2017 Rule, Kentucky and Colorado will employ an independent auditor to audit the Plaintiff-Hospitals' compliance with federal DSH requirements. The new federal DSH requirements imposed by the 2017 Rule will again harm the Plaintiff-Hospitals by causing the miscalculation of their hospital-specific limits, which may require the Plaintiff-Hospitals to repay potentially millions of dollars in DSH payments they lawfully received.

68. The entire purpose of the DSH program—ensuring that the most vulnerable citizens will receive the treatment they require without fear of being turned away because of inability to pay—is undermined by the requirements imposed by the 2017 Rule. Thus, the irreparable harm is felt not only by the Plaintiff-Hospitals, but more importantly, by the Medicaid and uninsured patients that rely on the Plaintiff-Hospitals for treatment.

69. This pre-enforcement challenge of the 2017 Rule is ripe for judicial review because the legal issues presented are fit for judicial resolution and because the 2017 Rule requires Kentucky and Colorado to include Medicare and private insurer payments in calculating the Medicaid Shortfall component of the hospital-specific limit.

## CAUSES OF ACTION

### COUNT I:
### FAQs 33 and 34 Were Promulgated In Violation of the
### Rulemaking Requirements Imposed by the Administrative Procedure Act

70. The Plaintiff-Hospitals repeat and reallege paragraphs 1–69 as if set forth fully herein.

71. CMS's issuance of FAQs 33 and 34 constitutes "final agency action" within the meaning of 5 U.S.C. § 704.

72. Pursuant to 5 U.S.C. § 706, a "reviewing court shall . . . hold unlawful and set aside agency action found to be . . . without observance of procedure required by law."

73. FAQs 33 and 34 are legislative rules for which prior notice-and-comment rule-making was required by 5 U.S.C. § 553. Among other things, FAQs 33 and 34 effectively amend the unambiguous language of 42 C.F.R. § 447.299(c)(16) by adding private health insurance payments and Medicare payments to the calculation of the Medicaid Shortfall component, and have the force and effect of law. As such, they are legislative rules for which notice-and-comment rulemaking was required by 5 U.S.C. § 553.

### COUNT II:
### FAQs 33 and 34 Exceed Defendants'
### Statutory Authority Under 42 U.S.C. § 1396r-4

74. The Plaintiff-Hospitals repeat and reallege paragraphs 1–69 as if set forth fully herein.

75. CMS's issuance of FAQs 33 and 34 constitutes "final agency action" within the meaning of 5 U.S.C. § 704.

76. Pursuant to 5 U.S.C. § 706, a "reviewing court shall . . . hold unlawful and set aside agency action found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

77. The substantive requirements imposed by FAQs 33 and 34 exceed Defendants' statutory authority under 42 U.S.C. § 1396r-4. Section 1396r-4(g)(1)(A) unambiguously sets forth the calculation that must be used in determining the Medicaid Shortfall component of the hospital-specific limit. Section 1396r-4(g)(1)(A) expressly provides that only "payments under this subchapter"—i.e., the Medicaid Act—are to be subtracted from the costs of furnishing hospital services to individuals who are eligible for Medicaid. The requirements imposed by FAQs 33 and 34 regarding the inclusion of private health insurance and Medicare payments in the calculation of the Medicaid Shortfall component of the hospital-specific limit are contrary to the plain language of § 1396r-4(g)(1)(A) and are otherwise unreasonable.

### COUNT III:
### The 2017 Rule Exceeds Defendants' Statutory Authority Under 42 U.S.C. § 1396r-4

78. The Plaintiff-Hospitals repeat and reallege paragraphs 1–69 as if set forth fully herein.

79. CMS's issuance of the 2017 Rule constitutes "final agency action" within the meaning of 5 U.S.C. § 704.

80. Pursuant to 5 U.S.C. § 706, a "reviewing court shall . . . hold unlawful and set aside agency action found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

81. The substantive requirements imposed by the 2017 Rule exceed Defendants' statutory authority under 42 U.S.C. § 1396r-4. Section 1396r-4(g)(1)(A) unambiguously sets forth the calculation that must be used in determining the Medicaid Shortfall component of the hospital-specific limit. Section 1396r-4(g)(1)(A) expressly provides that only "payments under this subchapter"—i.e., the Medicaid Act—are to be subtracted from the costs of furnishing hospital services to individuals who are eligible for Medicaid. The requirements imposed by the 2017

Rule regarding the inclusion of private health insurance and Medicare payments in the calculation of the Medicaid Shortfall component of the hospital-specific limit are contrary to the plain language of § 1396r-4(g)(1)(A) and are otherwise unreasonable.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff-Hospitals respectfully request that this Court:

A.    Enter judgment in favor of the Plaintiff-Hospitals;

B.    Declare that FAQs 33 and 34 are unlawful and set them aside;

C.    Permanently enjoin Defendants and their agents, servants, employees, successors, and assigns from enforcing FAQs 33 and 34;

D.    Declare that the 2017 Rule is unlawful and set it aside;

E.    Permanently enjoin Defendants and their agents, servants, employees, successors, and assigns from enforcing the 2017 Rule;

F.    Award the Plaintiff-Hospitals their reasonable attorney's fees and costs; and

G.    Grant the Plaintiff-Hospitals such other relief as the Court deems just and proper.

Dated: June 19, 2017

Respectfully submitted,

HOOPER, LUNDY & BOOKMAN, P.C.

By: /s/ James F. Segroves
James F. Segroves (DC Bar No. 480630)
Kelly A. Carroll (DC Bar No. 1018485)
401 9th Street, NW, Suite 550
Washington, DC 20004
202.580.7700
202.580.7719 (fax)
jsegroves@health-law.com
kcarroll@health-law.com

*Counsel for Plaintiffs*